# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

NILOUFAR NELLIE SALAHI
FIROZABADI,
MOHAMMADMAHDI NABAVI,

    **Plaintiffs,**

v.

MARCO RUBIO, Secretary of the
Department of State, U.S.
DEPARTMENT OF STATE,
Executive Agency, MICHAEL B.
GOLDMAN, Ambassador, U.S.
Consulate Ankara, Turkey,

    **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:25-CV-993-MHC**

## ORDER

    This case comes before the Court on Defendants' Motion to Dismiss [Doc. 7].

## I.    BACKGROUND[1]

    Plaintiff Niloufar Nellie Salahi Firouzabadi ("Firouzabadi") is a U.S. citizen, and Plaintiff Mohammadmahdi Nabavi ("Nabavi") is Firouzabadi's spouse and a

---

[1] Because this case is before the Court on Defendants' Motion to Dismiss, the facts are presented as alleged in the Complaint [Doc. 1]. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).  Further, when

citizen of Iran.  Compl. ¶¶ 13-14.  Plaintiffs filed the above-styled mandamus

action on February 25, 2025, seeking to compel the U.S. Government to adjudicate

Nabavi's family preference visa application.  Id. ¶¶ 1, Request for Relief.

Specifically, Plaintiffs are seeking to compel Defendants "to issue a decision on

the Immigrant Visa Application submitted by Plaintiff Mr. Mohammadmahdi

Nabavi that has been pending in the U.S. Consulate in Ankara, Turkey ("the

Consulate") since July 6, 2022."  Id. ¶ 1.

### A.    Statutory and Regulatory Background for Family Preference Visas

The Immigration and Nationality Act ("INA") governs the process for

foreign nationals to obtain visas for temporary or permanent residence in the

United States.  8 U.S.C. §§ 1101, et seq.  Immigrant visas are intended for foreign

nationals who seek to live permanently in the United States.  8 U.S.C.

§§ 1101(a)(16), (2).  There are three types of immigrant visas: (1) family-

sponsored; (2) employment-based; and (3) diversity, which are drawn annually

from a lottery.  8 U.S.C. § 1151.  This case concerns an application for an

immediate relative family-sponsored visa.  Immediate relative visas are for

---

considering a Rule 12(b)(1) motion to dismiss, the court may consider evidence
outside the pleadings without converting the proceeding to one for summary
judgment.  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

unmarried minor children, spouses, and parents of adult United States citizens.  See

8 U.S.C. § 1151(b)(2)(A)(i) (defining "immediate relatives").[2]

A citizen seeking to sponsor their spouse for an immediate relative family-

sponsored visa must file a Form I-130 with the United States Citizenship and

Immigration Services ("USCIS").  See 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1).

> Under this process, the citizen-relative first files a petition on behalf of
> the alien living abroad, asking to have the alien classified as an
> immediate relative.  See §§ 1153(f), 1154(a)(1).  If and when a petition
> is approved, the alien may apply for a visa by submitting the required
> documents and appearing at a United States Embassy or consulate for
> an interview with a consular officer.  See §§ 1201(a)(1), 1202.  Before
> issuing a visa, the consular officer must ensure the alien is not
> inadmissible under any provision of the INA.  § 1361.

Kerry v. Din, 576 U.S. 86, 89 (2015).  The foreign national's application is not

"complete" until the applicant brings the required paperwork to the in-person

interview with a consular officer, affirms the information in the application is true,

and biometrically signs the application under oath. 22 C.F.R. § 42.62; Karimova v.

Abate, No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024).  Then,

once a visa application has been properly completed and executed before a

consular officer in accordance with the provisions of the INA and the

---

[2] Plaintiffs are seeking an immediate relative family sponsored visa for Nabavi as
the spouse of Firouzabadi.  See Compl. ¶¶ 1-2, 13-14.

implementing regulations, the consular officer must either issue or refuse the visa.

22 C.F.R. §§ 42.62, 42.81(a); Hussein v. Beecroft, 782 F. App'x 437, 439 (6th Cir.

2019).  Specifically, 22 C.F.R. § 42.81 instructs that

> [w]hen a visa application has been properly completed and executed
> before a consular officer in accordance with the provisions of the INA
> and the implementing regulations, the consular officer must issue the
> visa, refuse the visa under INA 212(a) or 221(g) or other applicable law
> or, pursuant to an outstanding order under INA 243(d), discontinue
> granting the visa.

22 C.F.R. § 42.81(a).  "If a visa is refused, and the applicant within one year from

the date of refusal adduces further evidence tending to overcome the ground of

ineligibility on which the refusal was based, the case shall be reconsidered.  In

such circumstance, an additional application fee shall not be required."  22 C.F.R.

§ 42.81(e).

### B.    Plaintiffs' Family-Preference Visa Application

Firouzabadi filed a I-130 Petition with USCIS on July 18, 2021, which was

approved on April 25, 2022.  Compl. ¶¶ 28-29.  On July 6, 2022, Nabavi submitted

his Form DS-260, Immigrant Visa Electronic Application and accompanying

documentation.  Id. ¶ 30.  Nabavi attended a consular immigrant visa interview on

October 20, 2023.  Id. ¶ 32.  The consular officer subsequently "refused" Nabavi's

application, stating as follows:

> A U.S. consular officer refused your visa application pursuant to
> section 221(g) of the U.S. Immigration and Nationality Act for the
> reason or reasons selected below. This constitutes a final adjudication
> of your visa application. However, this refusal may be overcome if
> missing documentation is provided and/or administrative processing is
> concluded.

Consular officer decision and refusal notice ("Refusal Notice"), attached as Ex. E.

to Compl. [Doc. 3-4]. The consular officer's Refusal Notice is consistent with

information available on the State Department's Consular Electronic Application

Center ("CEAC")'s website indicating that, as of February 7, 2025, Nabavi's visa

application status is "Refused." See printout from State Department website

("CEAC Printout"), attached as Ex. M to the Compl. [Doc. 3-12] ("A U.S. consular

officer has adjudicated and refused your visa application. Please follow any

instructions provided by the consular officer. If you were informed by the consular

officer that your case was refused for administrative processing, your case will

remain refused while undergoing such processing. You will receive another

adjudication once such processing is complete. Please be advised that the

processing time varies and that you will be contacted if additional information is

needed."); Compl. ¶ 8.

Plaintiffs allege that Nabavi received a request for additional documents

pertaining to a possible joint sponsorship and additional proof of his relationship to

Firouzabadi on the same day as his consular officer interview. Plaintiffs allege that

they promptly complied with those requests on October 24, 26, and 30. Compl.

¶¶ 32-35. Subsequent to Nabavi's interview and the provision of the requested

documentation, Plaintiffs attempted to contact Defendants to inquire about the

status of the application "but have not received any substantial information." Id.

¶ 36. Most responses indicated that Nabavi's case "was undergoing the necessary

administrative processing." Id. ¶¶ 1-6. Plaintiffs allege that to date, "the

Immigrant Visa Application has remained stagnant in administrative processing,

and there have been no further substantive updates." Id. ¶ 39.

Based on the foregoing, Plaintiffs filed the above-styled lawsuit asserting the

following two counts: (1) unreasonable delay under the Administrative Procedure

Act ("APA"), 5 U.S.C. § 706(1), based on Defendants' alleged failure to adjudicate

Nabavi's visa application, and (2) a writ of mandamus to compel Defendants to

perform the duty to adjudicate Nabavi's visa application pursuant to 22 C.F.R.

42.81(a). Id. ¶¶ 42-63.

## II.   LEGAL STANDARD

Under Rule 12(b)(1), a claim may be dismissed for "lack of jurisdiction over

the subject matter." FED. R. CIV. P. 12(b)(1). "Facial attacks on the complaint

require the court merely to look and see if the plaintiff has sufficiently alleged a

basis of subject matter jurisdiction, and the allegations in his complaint are taken

as true for the purposes of the motion." <u>Lawrence</u>, 919 F.2d at 1529 (quotations and citation omitted) (alterations accepted).  In such cases, the plaintiff is "afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." <u>Id.</u> (citing <u>Williamson v. Tucker</u>, 645 F.2d 404, 412 (5th Cir. 1981)[3]).  A court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." <u>See id.</u> (quoting <u>Williamson</u>, 645 F.2d at 412-413); <u>see also</u> <u>Lee-Lewis v. Kerry</u>, No. 2:13-CV-80, 2016 WL 6647937, at *3 (S.D. Ga. Nov. 8, 2016).

On the other hand, "factual attacks . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." <u>McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.</u>, 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotations omitted).  "Under a factual attack, the Court is free to weigh the facts and is not required to view them in the light most favorable to the plaintiff." <u>Am. Ins. Co. v. Evercare Co.</u>, 699 F. Supp. 2d 1355, 1358 (N.D. Ga. 2010), <u>aff'd per curiam</u>, 430 F. App'x 795 (11th Cir. 2011) (citing <u>Carmichael v. Kellogg, Brown & Root Servs., Inc.</u>, 572 F.3d 1271, 1279 (11th Cir. 2009)).  When

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

subject matter jurisdiction is challenged on a motion to dismiss, the party asserting jurisdiction bears the burden of proof.  Cypress Ins. Co. v. Jesse Batten Farms, LLC, 662 F. Supp. 3d 1337, 1344 (N.D. Ga. 2023) (quoting Murphy v. Sec'y, U.S. Dep't of Army, 769 F. App'x 779, 782 (11th Cir. 2019)).

## III.    ANALYSIS

Defendants argue, among other things, that (1) the Court lacks subject matter jurisdiction over Plaintiffs' claim in this case because Defendants do not have a duty to further process or re-adjudicate Nabavi's visa application after it was refused by the consular officer, and (2) even if the Court did have subject matter jurisdiction, Plaintiffs have failed to state a viable claim.  Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pls.' Compl. ("Defs.' Br.") [Doc. 7 at 4-31] at 8-25.

Plaintiffs oppose the Motion to Dismiss, arguing that the Court has jurisdiction to hear this case because the consular official's refusal pursuant to 221(g) was "provisional," leaving Nabavi's visa application "open for further administrative processing."  Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") [Doc. 10] at 2, 10, 16-20.  Plaintiffs also argue that the consular non-reviewability doctrine does not bar action for protracted government delay in adjudicating a visa

application, and that they have stated a viable claim for unreasonable delay in adjudicating Nabavi's visa application. Id. at 14-24.

**A.    Neither the APA nor the Mandamus Act Provide Jurisdiction for this Court to Order an Agency to Perform a Discretionary Act.**

The APA "does not provide judicial review for everything done by an administrative agency." Hearst Radio v. F.C.C., 167 F.2d 225, 227 (D.C. Cir. 1948). In fact, the APA "preclude[s] judicial review of discretionary agency functions." Hidalgo Canevaro v. Wolf, 540 F. Supp. 3d 1235, 1241 (N.D. Ga. 2021) (citing 5 U.S.C. § 701 (providing that the APA does not apply to "agency action is committed to agency discretion by law.")). Instead, under the APA, a claim alleging that an agency has unlawfully withheld or unreasonably delayed agency action "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). In other words, the APA "empowers a court only to compel an agency to perform a ministerial or non-discretionary act." Id. (internal punctuation and citation omitted).

Similarly, a court does not have jurisdiction under the Mandamus Act, 28 U.S.C. § 1361,[4] to order an agency to perform a discretionary act:

---

[4] As to jurisdiction under the Mandamus Act, courts have explained that: "where . . . a plaintiff invokes the Court's mandamus jurisdiction to compel action but not

Under 28 U.S.C. § 1361, otherwise known as The Mandamus Act, the district court has original jurisdiction over a mandamus action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969).

***

"The test for jurisdiction is whether mandamus would be an appropriate means of relief." Jones v. Alexander, 609 F.2d 778, 781 (5th Cir. 1980).  Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) "no other adequate remedy [is] available." Id.  Put another way, a writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984).

Cash v. Barnhart, 327 F.3d 1252, 1257-58 (11th Cir. 2003); see also Norton, 542

U.S. at 63 ("The mandamus remedy was normally limited to enforcement of a

specific, unequivocal command, the ordering of a precise, definite act about which

---

to direct the exercise of judgment or discretion, mandamus jurisdiction is coextensive with the remedies available under the APA." Moreno v. Wolf, 558 F. Supp. 3d 1357, 1363 (N.D. Ga. 2021); see also Singh v. Mayorkas, No. 3:23-cv-00527, 2024 WL 420124, at *2 (M.D. Tenn. Feb. 5, 2024) ("If the relief sought by plaintiffs through a writ of mandamus is essentially the same as that sought under the APA, the court may consider the claim under the APA.") (quotation omitted) (citing Indep. Mining Co. v. Babbit, 105 F.3d 502, 507 (9th Cir. 1997)).  The Court therefore considers mandamus jurisdiction as coextensive with that provided under the APA.

an official had no discretion whatever.") (internal punctuation and citation omitted).

**B.    This Court Does Not Have Subject Matter Jurisdiction to Adjudicate a Dispute Wherein Plaintiffs Have Not Identified a Non-Discretionary Duty to Act.**

The Court is without jurisdiction to hear Plaintiffs' APA claim in this case because the action Plaintiffs seek to compel—the issuance of a final decision on the Immigrant Visa Application submitted by Nabavi's— already has occurred and Plaintiffs have not identified any non-discretionary duty owed to Plaintiffs beyond what already has occurred.  Plaintiffs argue that the Refusal Notice was not final and Defendants have yet to exercise their duty to issue the visa or refuse it: "[o]nce a visa application has been properly executed," as alleged in this case, "consular regulations are unequivocal: the officer must either issue the visa or refuse it." Pls.' Opp'n at 17-18 (citing 22 C.F.R. § 42.81(a)).  Plaintiffs acknowledge that Nabavi's visa application was "refused" after the consular interview and have attached the Refusal Notice to their Complaint, but contend that the "refusal" was "temporary" or "provisional" because (1) Defendants allegedly failed to follow the refusal procedures required by 22 C.F.R. § 42.81 and the FAM[5] and (2) repeated

---

[5] The State Department's Foreign Affairs Manual ("FAM") is "a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State

communications to Plaintiffs indicating that the case remains in "administrative processing." Pls.' Opp'n at 2, 10-14.

---

Department, the Foreign Service and, when applicable, other federal agencies." LIBRARY OF CONGRESS, *Foreign Affairs Manual - U.S. Department of State*, available at https://www.loc.gov/item/lcwaN0026575/ (last visited February 20, 2026). The FAM "convey[s] codified information to Department staff and contractors so they can carry out their responsibilities in accordance with statutory, executive and Department mandates." Id. The FAM "articulates" the State Department's "official guidance, including procedures and policies, on matters relating to Department management and personnel[.]" 22 C.F.R. § 5.5. The Foreign Affairs Manual is not binding and "lack[s] the force of law." Scales v. Immigration & Naturalization Servs., 232 F.3d 1159, 1166 (9th Cir. 2000) (citations omitted). Although the Foreign Affairs Manual cannot be the ultimate source of a legal obligation for Defendants to take any particular action on Plaintiffs' visa application, the Court may rely on the FAM as one persuasive tool in reading the relevant statutes and regulations and in ascertaining the function of the refusal issued "pursuant to section 221(g) of the [INA]" in this case. "[A] court may take judicial notice of government websites." Lamonte v. City of Hampton, 576 F. Supp. 3d 1314, 1327 (N.D. Ga. 2021) (citing Rule 201(b)(2) of the Federal Rules of Evidence (providing that courts may judicially notice facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")); see also Ga. Ass'n of Latino Elected Officials, Inc. v. Gwinnett Cnty. Bd. of Registration & Elections, 36 F.4th 1100, 1123 (11th Cir. 2022) (taking judicial notice that the government website offers Gwinnett County voters fifteen languages other than English."); Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (affirming decision to take judicial notice of public records); Laroque v. Sec'y, Dep't of Homeland Sec., No. 6:20-CV-788-WWB-EJK, 2021 WL 7084102, at *2 (M.D. Fla. Oct. 22, 2021) (taking judicial notice of USCIS's decision on the plaintiff's Form I-485); Xiong v. Johnson, No. 2:20-CV-0045-66MRM, 2020 WL 5500215, at *1 (M.D. Fla. Sept. 11, 2020) (taking judicial notice of the plaintiff's approved I-485 application where such information was readily available and verifiable through the he USCIS website's 'case status online' tool).

1.   **Plaintiffs fail to cite any authority for the proposition that Defendants failed to follow the refusal procedures or that any alleged failure to do so rendered the Refusal Notice nugatory.**

Plaintiffs argue that the Refusal Notice given to Nabavi "did not provide Form OF-194 nor advise Plaintiff Nabavi of the regulatory right to supervisory review required for a permanent refusal under § 42.81(e)." Pls.' Opp'n at 10-11. However, Plaintiffs do not cite any statutory or regulatory authority for the proposition that a notice pursuant to Section 42.81 as Plaintiffs allege was provided to Nabavi in this case must also provide a Form OF-194 or advise Nabavi of the regulatory right to supervisory review.[6]  Nor has Plaintiff cited any controlling legal authority for the proposition that a failure to include a Form OF-194 or advisory regarding the regulatory right to supervisory review renders the refusal non-final.[7]

---

[6] To the contrary, nothing in the FAM requires a written refusal letter to include a Form OF-194 or notify the applicant of the regulatory right to supervisory review. See 9 FAM 504.11-3(A)(1)(e).  Instead, the FAM provides that a section 221(g) "Refusal Letter" must include the language: "Please be advised that for U.S. visa purposes . . . this decision constitutes a denial of a visa."  9 FAM 504.11-3(A)(1)(e)(c).

[7] Plaintiff cites Assad v. Holder, No. 13-cv-117, 2013 WL 5935631 (D.N.J. Nov. 1, 2013) for the proposition that the Court has subject matter jurisdiction to hear this case.  The Court in Assad denied a motion to dismiss on the same ground asserted in this case, finding that there was subject matter jurisdiction because the embassy failed to execute its nondiscretionary duty to issue a visa or a final refusal.

The plain language of the Refusal Notice, which Plaintiffs acknowledge Nabavi received, stands in direct contrast to Plaintiffs' position that the Refusal Notice was non-final. The Refusal Notice explicitly states that it was "a final adjudication" of Nabavi's visa application: "[a] U.S. consular officer refused your visa application pursuant to section 221(g) of the [INA]," and that "[t]his constitutes a final adjudication of your visa application." Refusal Notice. In addition to being supported by the plain language of the Refusal Notice provided in this case, the FAM provides further guidance as to the final nature of § 221(g) refusals, generally. According to the FAM, "[a] refusal under INA [§] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B); Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 94 (D.D.C. 2024).

Accordingly, the Court finds that 22 C.F.R. § 42.81(a) created a non-discretionary duty for Defendants to act on Nabavi's visa application—to either

---

However, Assad, which is not binding on this Court, is factually divergent in that the refusal letter to the plaintiff after the plaintiff's interview explicitly stated that the visa decision was temporary: the applicant "was found temporarily ineligible." The Court found that this language, language not present in the Refusal Notice at issue here, "clearly indicate[d] that the decision on Assad's visa is still pending and not final." Id., 2013 WL 5935631, at *4. Further, subsequent communications with a visa inquiries unit informed plaintiff that her application "was still pending administrative review." Id., 2013 WL 5935631, at *1.

issue the visa or refuse it.[8]  Based on the allegations of the Complaint which this

Court assumes are true, Defendants performed this duty when the consular officer

refused Nabavi's visa application pursuant to section 221(g) of the INA.  After a

§ 221(g) refusal has been issued Plaintiffs have not identified any discrete action

consular officers must take to satisfy their obligations under the INA, or any other

pertinent statute or regulation.

Most courts that have considered this issue have found that substantially

similar notices constituted a final adjudication of visa applications.  See Yousefifar

v. U.S Dep't of State, No. 4:24-CV-109, 2025 WL 1805315, at *8 (S.D. Ga. June

30, 2025) (holding that after a visa applicant "participates in a consular interview,

is refused a visa under § 221(g), and is permitted to provide supplemental

_____

[8] Nothing in Section 42.81(a) prevents a consular officer from refusing a visa
application, and then evaluating it further via administrative processing.  In fact,
Section 42.81(e) expressly contemplates such a process. 22 C.F.R. § 42.81(e)
("Reconsideration of refusal.  If a visa is refused, and the applicant within one year
from the date of refusal adduces further evidence tending to overcome the ground
of ineligibility on which the refusal was based, the case shall be reconsidered.").
Subsection (e) accurately describes Nabavi's circumstances.  His visa application
was refused under Subsection (a), and he subsequently submitted additional
information which Plaintiffs hope will "overcome the ground of ineligibility on
which the refusal was based."  Because Subsection (e) authorizes reconsideration
of a refusal, the court finds that a consular officer is permitted, under Subsection
(a) to refuse a visa application but offer the possibility that a closed door might be
opened in response to new information.  See Karimova, 2024 WL 3517852, at *2.

information . . . a final decision has been issued on the visa petition.");

Sarshartehran v. Rubio, No. 7:24-CV-633, 2025 WL 1261787, at *6 (W.D. Va.

May 1, 2025) (granting the government's motion to dismiss for lack of subject

matter jurisdiction finding that the § 221(g) refusal was "final" and that there "no

further discrete action consular officers must take to satisfy their obligations under

the INA."); Farahani v. Laitinen, No. 1:23-cv-922, 2025 WL 360833, at *4

(M.D.N.C. Jan. 31, 2025) (holding that the government "discharged the discrete,

non-discretionary duty to adjudicate the visa applications . . . by informing them

that the applications had been refused and were being placed in administrative

processing."); Turner v. Blinken, No. 24-318, 2024 WL 4957178, at *5 (D. Md.

Dec. 3, 2024) (granting defendants' motion to dismiss for lack of subject matter

jurisdiction where plaintiffs "cannot show that Defendants have failed to fulfill a

discrete, non-discretionary duty to act after their refusal . . . pursuant to

§ 221(g)."); Ramizi v. Blinken, No. 5:23-cv-730, 2024 WL 3875041, at *10

(E.D.N.C. Aug. 14, 2024) (concluding that the defendants had "discharged their

nondiscretionary duty to adjudicate [the plaintiff's] visa application" by issuing a

refusal pending administrative processing: "the possibility of reconsideration of a

refusal does not mean that the refusal was not a refusal."); Berenjian v. Blinken,

No. 1:24-CV-00663-MSN-IDD, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024)

(holding that the "refusal at the time of the applicant's interview discharges the government's obligations with respect to the application," thus depriving the district court of subject matter jurisdiction); Ameen v. U.S. Dep't of State, No. 1:23-cv-01397, 2024 WL 3416264, at *3 (E.D. Va. July 15, 2024) (holding that the visa applicant did "not raise any mandatory procedures which Defendants have failed to follow" because "an initial refusal followed by further inquiry is consistent with visa statute and regulations."); Yaghoubnezhad, 734 F. Supp. 3d at 101 (rejecting the argument that the § 221(g) refusal was non-final and that the visa application remained pending for administrative processing: "In refusing Plaintiffs' applications under § 221(g) after their interviews with consular officers, State complied with the regulations governing visa adjudications. It thereby discharged its nondiscretionary duty."); Tesfaye v. Blinken, No. 22-411, 2022 WL 4534863, at *5 (D.D.C. Sept. 28, 2022) ("Plaintiffs themselves indicate that after their interview, their applications were 'refused' under INA § 221(g)—in other words that the consular officer took the precise action directed by the regulation.").

The D.C. Circuit's reasoning in Karimova v. Abate, 2024 WL 3517852, at *2-4, is particularly instructive. The D.C. Circuit in an unpublished opinion determined that where a visa application "was considered by the consular officer and officially refused," consular officers have no further duty "after making that

decision, to hold onto the application in case circumstances later change in the

applicant's favor, thereby saving the applicant the time and cost of filing a whole

new visa application." Id. at *4. The court explained that "keeping the door open

in administrative processing" does not mean that a visa application has not been

"officially refused." Id. at *2. Based on this reasoning, the D.C. Circuit affirmed

the lower court:

> Karimova sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another "final decision" on her already-refused visa application. Because Karimova has not identified an adequate legal basis for that duty, the district court properly dismissed her claim.

Id. at *6.

### 2.    Plaintiffs fail to cite any law in support of the proposition that post-refusal communications indicating that Navabi's application were in "administrative processing" change the Refusal Notice's finality.

Plaintiffs maintain that communications from the Embassy in Turkey where

Navabi had his interview, as well as information on the State Department's

website, specifically the Consular Electronic Application Center, confirm that this

case is still open. Pls.' Opp'n at 12-14 (alleging that Navabi would receive "the

same template response: the case 'is still undergoing administrative processing and

you will be notified when a final decision is made.'"). Plaintiffs, however, have

not identified any legal authority for the proposition that the post-refusal

administrative processing negates the final nature of the refusal issued after the consular interview.   To the contrary, "[a]n initial refusal to issue a visa at the consular level, followed by administrative processing, constitutes a final decision on the part of the consular office." Zekiri v. Sec'y, U.S. Dep't of State, No. 6:24-CV-1232-JSS-NWH, 2025 WL 2021308, at *4 (M.D. Fla. July 18, 2025); see also Karimova, 2024 WL 3517852, at *3-6 (affirming the district court's dismissal of the noncitizen plaintiff's complaint seeking a writ of mandamus and review under the APA and explaining that the plaintiff failed to identify a clear duty that the consular office failed to perform in processing her visa application after the consular office refused it for further administrative processing pursuant to INA section 221(g)); Yaghoubnezhad, 734 F. Supp. 3d at 101 (rejecting the Plaintiffs' argument that the post-interview refusal was not final because the visa applications remained in administrative processing because there is no "statute or regulation [that] require[s] [the defendant] to complete "administrative processing" once it has already properly refused a visa."); Yousefifar, 2025 WL 1805315, at *8 ("[A] visa refusal followed by administrative processing constitutes a final decision."); 22 C.F.R. § 42.81(e) (providing a mechanism for the reconsideration of a consular officer's visa refusal).

Similarly, the information on the State Department CEAC website, attached as an exhibit to the Complaint, fails to establish that Navabi's post-interview Refusal Notice was non-final.  CEAC Printout.  Navabi's CAEC page reads in bold and large font "**Refused**" and then clearly states that a "U.S. consular officer has adjudicated and refused your visa application." Id.  It further clarifies: "[i]f you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing." Id. Far from supporting Plaintiffs' position that the Refusal Notice was not final, the CEAC Printout confirms that it was final.

Because Plaintiffs have failed to identify a clear, non-discretionary duty to act on the part of Defendants, this Court does not have subject matter jurisdiction to enter an order mandating government action and Plaintiffs' claims under the APA and Mandamus Act fail as a matter of law.  See Hidalgo Canevaro, 540 F. Supp. 3d at 1243 (holding that the court had no subject matter jurisdiction to enter an order mandating action where there the government had no non-discretionary duty to act).[9]

---

[9] Because the Court finds that it does not have subject matter jurisdiction to adjudicate Plaintiffs' claims in this case, it need not consider Defendants' alternative arguments that the consular nonreviewability doctrine bars Plaintiffs' claims Plaintiffs fail to state a claim.  See Mot. to Dismiss at 16-25.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion

to Dismiss [Doc. 7] is **GRANTED**.

**IT IS SO ORDERED** this 20th day of February, 2026.

MARK H. COHEN
United States District Judge